IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEMARIO NELSON #23342-056 | * | |
| Petitioner | * | |
| v. | * | Civil Case No. L-10-965 |
| MR. WHITEHEAD, *Warden* | * | |
| Respondent | * | |
| | *** | |

MEMORANDUM

Demario Nelson ("Nelson") petitions, pro se, for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Nelson, a Federal Bureau of Prisons ("BOP") inmate confined at the Federal Correctional Institution-Cumberland,[1] challenges an alleged delay in his Residential Drug Abuse Program ("RDAP") placement which, in turn, purportedly impedes his consideration for home confinement provided under the Second Chance Act of 2007, U.S.C. § 3624(c). As relief, he requests ten months of jail credit and consideration for home confinement under the Second Chance Act. After due consideration, the Petition will be dismissed as to his RDAP claims and dismissed without prejudice for failure to exhaust administrative remedies as to his Second Chance Act claims.

**I.    Residential Drug Abuse Program**

RDAP provides a one-year sentence reduction as an incentive for its successful completion. 18 U.S.C. § 3621(e)(2)(B). It provides "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may* be

---

[1] On August 27, 2003, Nelson was sentenced in the Eastern District of North Carolina to 120 months incarceration for possession of a firearm by a felon in violation of 18 U.S.C. § 922 (g)(1) and 924. See United States v. Nelson, Criminal No. 5-02-307-BO-2 (E.D.N.C).

reduced by the Bureau of Prisoners, but such reduction may not be more than one year from the term the prisoner must otherwise serve." Id. (Emphasis added). The plain language of the statute is clear that any reduction in sentence resulting from completion of a treatment program, such as RDAP, is purely discretionary and may be for any period of time, up to a maximum of one year. Although Nelson's desire to avail himself of early release incentives as soon as possible is understandable, placement in RDAP and any concomitant reduction in time spent in custody is within the discretion of BOP authorities. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). Consequently, this claim presents no cause for habeas corpus relief.[2]

Contrary to Petitioner's inferences, the alleged delay in placement does not suggest violation of due process. Complaint, p. 3. Where, as here, Congress has vested federal prison officials with discretionary authority over matters of housing, classification and eligibility for rehabilitative programming, a federal prisoner has no legitimate statutory or constitutional entitlement sufficient to invoke due process. See Moody v. Daggett, 429 U.S. 78, 88 n. 9, (1976).

**II.     Second Chance Act**

The Second Chance Act, codified at 18 U.S.C. § 3624(c) (1) and (2) provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment

---

[2] Nelson appears to assert that he has exhausted his administrative remedies as to RDAP placement. Complaint, p. 3.

> spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

18 U.S.C. § 3624(c) (1) and (2).

Nelson contends that requiring him to exhaust his administrative remedies before presenting his "Second Chance Act" claims to this Court is "futile" and he would suffer irreparable harm. Nelson acknowledges that he has not exhausted the BOP Administrative Remedy Program ("ARP"). [3] He appears to assert that if granted relief, he might be deemed eligible for Residential Reentry Center placement and released from prison.

Courts have consistently required exhaustion of administrative remedies prior to petitioning for a writ of habeas corpus. Exhaustion allows the appropriate agency to develop a factual record and apply its expertise, which can facilitate judicial review. This also permits agencies to grant the relief requested, which conserves judicial resources and provides agencies the opportunity to correct their own errors, fostering administrative autonomy, before a petitioner

---

[3] The BOP has a three-level ARP that is available to inmates for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must first attempt informally to resolve the issue with institutional staff. See 28 C.F.R. § 542.13(a). If the concern is not informally resolved, an inmate may file an appeal to the Warden of the institution where he is confined. See 28 C.F.R. § 542.14. An inmate may then further appeal an adverse decision to the Regional Director. See 28 C.F.R. § 542.15(a). Finally, the inmate may make an administrative appeal to the BOP's Central Office. Id. No administrative remedy appeal is considered to be fully exhausted until it has been reviewed by the BOP's Central Office. Id. If the inmate receives no response within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

hales the matter into federal court.  See McCarthy v. Madigan, 503 U.S. 140, 144-145 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3rd Cir. 1996).

There are, however, instances where exhaustion may be excused.  The Supreme Court recognizes that "it is a principle controlling all habeas corpus petitions to the federal courts, that those courts will interfere with the administration of justice…only in rare cases where exceptional circumstances of peculiar urgency are shown to exist."  Rose v. Lundy, 455 U.S. 509, 515-516 (1982).   Exhaustion of administrative remedies may not be required where a petitioner demonstrates futility, the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or the administrative procedure is clearly shown to be inadequate to prevent irreparable harm.  See Lyons v. U.S. Marshals, 840 F.2d  202, 205 (3rd Cir. 1988).

Administrative exhaustion is not futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals before the 12-month pre-release date.[4]  Unless the agency is certain to rule adversely, however, a petitioner's unsupported prediction of failure does not excuse his lack of administrative exhaustion.   See Thetford Properties IV Ltd. Partnership v. U.S. Department of Housing & Urban Development., 907 F.2d 445, 450 (4th Cir. 1990). Allowing a petitioner to avoid the administrative process based on a mere conclusory assertion "would allow the futility exception to swallow the exhaustion."   Id.  According to documents

---

[4] Indeed, the 12 month pre-release period is a statutory maximum and not a mandate.  *See* 18 U.S.C. § 3624 (c)(1)-(6).

filed by Nelson, his projected release date is July 23, 2012.[5] Thus, it appears that he has sufficient time to exhaust his administrative remedies before he is eligible for transfer to a Residential Reentry Center to serve the statutory maximum of twelve months.[6] A separate Order follows.

Dated this 22nd day of April 2010.

/s/

_____
Benson Everett Legg
United States District Judge

---

[5] The BOP inmate locater indicates that as of 4/21/10, Nelson's actual or projected release date is 8/16/2012.

If each stage of the ARP process required the maximum number of days allowed by statute, the entire process would take approximately four months. See 28 C.F.R. § 542.14 to 542.15; see also Larue v. Adams, 2006 WL 1674487 *9 (S.D. W. Va. June 12, 2006).